DECISION
Before this Court is a request to release certain financial records filed under seal with the Court. On April 25, 2005, the State of Rhode Island requested the issuance of subpoena duces tecum in accordance with R.I. Super. R. Crim. P. 17(c).[1]
The request pertained to certain financial records relating to Defendants Michael and Jeffrey Derderian ("Defendants"). The Defendants have each been charged with 200 counts of involuntary manslaughter based on the one hundred deaths resulting from the Station nightclub fire on February 20, 2003. Both Defendants allegedly owned and operated the nightclub in which the deaths resulted and were charged under the theories of misdemeanor manslaughter and criminal negligence manslaughter. Rhode Island Gen. Laws. 1956 § 11-23-3.
 FACTS AND TRAVEL
On May 26, 2005, the Court granted a hearing regarding the propriety of the 17(c) request. The State asserted that the financial health and condition of both Defendants was relevant and admissible to show that the Defendants had the financial capability to take certain safety precautions that could have prevented or decreased the amount of deaths resulting from the fire. The State anticipates that the financial statements will show that the Defendants could have afforded to make renovations to the leased space, as allegedly required by law, as well as implement additional safety procedures and policies. Defendants objected to the request, alleging the request was irrelevant to the manslaughter charges and a "fishing expedition." State v.Diprete, 698 A.2d 223, 225 (R.I. 1997).
The Court issued the 17(c) subpoenas, but directed the subpoenaed records be returned to the Court and placed under seal until further consideration and review of the Court. On May 16, 2006, the State filed a request to have the records released to the parties and their attorneys for inspection, in preparation of the pending criminal trials.
 RULE 17(C) SUBPOENAS
Pretrial subpoenas are issued under Rule 17(c) at the discretion of the trial court based on a fact-intensive inquiry.State v. Diprete, 698 A.2d 223, 226 (R.I. 1997). The application for subpoenas must clear the "`three hurdles' established by the Court in Nixon, namely `(1) relevancy; (2) admissibility;' and `(3) specificity.'" Id. at 226 (quotingUnited States v. Nixon, 418 U.S. 683, 700 (1974)). In order to require pretrial production under Rule 17(c), the moving parting must show:
 "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain such inspection may tend unreasonably to delay trial; and (4) that the application is made in good faith and is not intended as a general `fishing expedition.'" Diprete, 698 A.2d at 225 (quoting United States v. Nixon, 418 U.S. 683, 699).
Relevancy is shown when there is a "sufficient likelihood" that the documents requested will be relevant to the offense charged.Nixon, 418 U.S. at 700. "Mere speculation as to the content of documents is hardly a showing of relevance." United States v.Concemi, 957 F.2d 942, 949 (1st Cir. 1992).[2]
 NATURE AND SIGNIFICANCE OF SUBPOENAED DOCUMENTS
The involuntary manslaughter charges against the Defendants involve the ownership and operation of an allegedly unsafe nightclub. The Defendants have been accused of allowing overcrowding in the nightclub, affixing foam with insufficient fire resistance to the walls of the nightclub, failing to maintain a physically safe environment for public assembly, and maintaining dangerous policies and procedures related to fire safety and pyrotechnic use. As increasing the safety of the Station nightclub would have undoubtedly been of some cost, the available financial assets of the Defendants could be relevant to show the awareness, motive, and state of mind of the Defendants when allegedly disregarding certain safety concerns. The requested financial records could substantiate or rebut the theory that the Defendants prioritized the maximization of profits over the safety of the nightclub patrons. The Defendants priority for safety in the nightclub is relevant to the State's burden of proving the indifference for human life required for criminal negligence manslaughter and relevant to prove the death was a natural and foreseeable result of unlawful conduct under the circumstances, which is necessary for misdemeanor manslaughter.
The Court also finds that the request was made in good faith to obtain information specific to the Defendants' financial conditions. Rule 17(c) was not designed as a means of discovery, but rather a tool to review specific, identifiable evidence before trial so as to expedite the trial process. State v.DiPrete, 698 A.2d 223, 226 (R.I. 1997). The requested subpoenas were directed to seven specific entities: the Rhode Island Division of Taxation, Bank of America (formerly Fleet Bank), CUNA Brokerage Services, Inc, John F. Muto, C.P.A., Sovereign Bank, WPRI-TV, and WHDH-TV. The totality of the produced documents include tax returns, records of a certified public accountant, financial statements from two different banks, and records of payment made to Michael Derderian from his brokerage account and two media outlets. The requests were sufficiently limited to a manageable period of three to four years. The span of years was tailored to relate to the period in which the Defendants acquired and owned the Station nightclub.[3]
The Court further considers the advance inspection of the documents critical to avoiding unreasonable delay, as the documents will have to be both examined in their entirety and analyzed to determine the true and complete financial condition of the Defendants. The State has also averred, and Defendant does not contest, that the material is not otherwise available through other reasonable avenues.
 CONCLUSION
The State's request to the release of the subpoenaed documents to the parties and their attorneys is hereby GRANTED.
[1] "Subpoena. — * * *
 (c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."
[2] Interpretations of Federal Rule 17(c) provide strong guidance for state courts in Rhode Island because of the similarity between the Rhode Island rule and its federal counterpart. State v. DiPrete, 698 A.2d 223, 225 (R.I. 1997).
[3] The Defendants allegedly formed DERCO, LLC on November 24, 1999 for the express purpose of acquiring the Station nightclub. On March 1, 2000, the Defendants allegedly executed a lease for the nightclub and continued to own and operate the nightclub until the fire on February 20, 2003. State's Response toDefendant's Motion for Bills of Particular, K1-2003-054A, at 2 (February 16, 2005).